Consequently the evidence adduced bore directly upon her conduct, and the facts marshaled by the learned surrogate upon the ownership of the deposit were incidentally developed. Indeed, it does not appear that the estate of Mrs. Moran was represented in this proceeding. I think, then, that the decree in this respect should be reversed. Point is made that the surrogate has no jurisdiction of the matter, inasmuch as it represents a claim for a debt against a third person. It is true that a Surrogate's Court has no jurisdiction to determine the validity of such a debt. Van Valkenburg v. Lasher, 53 Hun, 594, 6 N. Y. Supp. 775, and cases cited; Meeks v. Meeks, 122 App. Div. 461, 106 N. Y. Supp. 907. On the other hand, I am not at all prepared to say that the surrogate upon an accounting has not jurisdiction to determine a question of the creation of such a trust when the question arises and all interested are parties to the proceeding. Heaton on Surrogates' Courts, § 1051, and authorities cited. The matter may be committed to the learned surrogate for his consideration. Various other objections are made to the decree, and some are of merit. It seems that the administrator acted as if she was making an intermediate account, and that the original citation so ran, but that thereafter a proceeding for the provisional settlement of her intermediate account and the proceeding for the compulsory accounting were by order of the surrogate consolidated.

While it is the duty of an appellate court to strive to modify and to affirm, to the end that the labor and expense of a trial de novo may be saved, yet there is no cogent reason in a case like this, where the questions presented may be readily disposed of by the learned surrogate in a few hearings and where the decree cannot stand in important particulars, why the court should not order a rehearing, rather than sift out and pass upon the various items of the account as if its primary function was to hold an accounting rather than to review.

I advise a reversal of the decree, with costs to the appellant. All concur.

---

### BRUNDAGE v. FONDA, J. & G. R. CO.

(Supreme Court, Appellate Division, Third Department. June 18, 1908.)

CARRIERS—INJURIES TO PASSENGERS—COLLISION—CAUSE.

    In an action for injuries to a passenger on an electric car in a collision between two cars running in opposite directions on the same track, evidence *held* to show that the collision was due solely to an unwarranted interference with block signals by a passenger on one of the cars, for which the carrier was in no way responsible.

Appeal from Trial Term, Montgomery County.

Action by Charles H. Brundage against the Fonda, Johnstown & Gloversville Railroad Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Charles S. Nisbet, for appellant.
George M. Albot, for respondent.

COCHRANE, J. The defendant operates an electric railroad. Two of its cars running in opposite directions on the same track collided. The track extends easterly and westerly. Plaintiff was a passenger on a west-bound car and was injured. The portion of the track under consideration was protected by signal devices at each end to warn operators of cars approaching from opposite directions. By such device, when a car entered upon the track in question, a lever was operated by the conductor or motorman, which displayed a light at each end of the track. Such lever could be operated from the car. The light constituted a notice to an approaching car that another car was already on the track. If no light was visible to the crew of an approaching car, it was notice that the track was clear, and after setting the signal and displaying the light to indicate their presence on the track they were at liberty to proceed.

No criticism is made as to the inadequacy or insufficiency of this signal device. The jury has found negligence in the operation of this signal by one or more of the defendant's employés. It is not difficult to dispose of this case without finding any substantial conflict in the evidence, so far as the question of defendant's negligence is concerned; and if an explanation of the accident can be given in harmony with all the evidence such explanation should be accepted, rather than one which involves a conflict of testimony and untruthfulness on the part of witnesses. The motorman of the west-bound car, on which plaintiff was a passenger, testifies that as he approached the easterly signal it was dark, indicating that the track was clear; that he slackened the speed of his car and operated the lever, with the result that a light was displayed; and that he then proceeded westerly until the collision occurred. In this statement he is corroborated by two passengers on his car, who were called as witnesses by the plaintiff, and who testified that the car slackened its speed, and substantially that the motorman operated the lever. Such is the testimony as to what occurred at the easterly signal.

A witness by the name of Jones, who boarded the east-bound car as a passenger at the place of the westerly signal, and who has no connection with the defendant, testifies that as that car was approaching that signal he changed it, and then ran along and jumped on the car. What his motive or impulse was for interfering with the signal is not important, because there is no contention that he was acting with the authority or knowledge of the defendant. He does not intelligibly explain what effect his action had on the light. He probably does not know. The conductor of that car testifies that, observing no light in the signal, he operated it so as to display the light, and the car proceeded. He did not know of the previous action of Jones, who had doubtless, by his improper interference, extinguished the light, and thus led the conductor to think that the track was clear. Up to this point there is not the slightest difficulty. If this were all the evidence, every one would unhesitatingly say that the accident was due solely to the meddlesome and unwarranted act of Jones, for which defendant was in no way responsible. The learned trial justice distinctly charged the jury that, if the testimony of Jones were true, the plaintiff could not recover.

111 N.Y.S.—6

But plaintiff produced a witness named Argersinger, who was a passenger on the west-bound car, sitting on the rear platform, facing backward, and who testified that after that car passed the easterly signal he observed that the light was not displayed. This apparently is in conflict with the testimony of the other witnesses as to the fact that the motorman of that car operated the signal, unless it be assumed that a light was displayed when he approached and that he so operated the signal as to extinguish it—an assumption which is quite unreasonable. But there is not necessarily any conflict in the testimony. Those two cars approached the opposite signals at approximately the same moment of time. The west-bound car arrived at the easterly signal one minute later than the east-bound car was due at the westerly signal. It is unquestioned that both cars were practically on time. It is obvious, therefore, that if the motorman of the west-bound car had displayed the signal in the precise manner as claimed by him, and Jones a moment thereafter had changed the other signal in the precise manner as testified by himself, that the easterly light would have been extinguished without the motorman's knowledge, and the testimony of the passenger riding backwards on the rear platform that no light was displayed would also be true. There is no improbability about this; but, on the contrary, such a sequence of events coincides with all the evidence, and must be accepted as the correct theory of the accident, rather than some other theory inconsistent with some of the evidence.

There is a very strong presumption in favor of the testimony of Jones. With the utmost candor he assumes responsibility for the accident. No reason is apparent why he should do so, except that the truth requires it of him, and, if truthful, there can scarcely be any question that the accident was due to his act, and if, as we have seen, the testimony of Argersinger and Jones can be harmonized, this judgment is clearly wrong.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur; KELLOGG, J., in result.